Alexander Makarenko

*v.*

W. W. Scott, *et al.*

(No. 10013)

Submitted January 18, 1949. Decided

March 8, 1949.

Kenna and Lovins, Judges, dissenting.

*Townsend & Townsend, Hillis Townsend, T. C. Townsend* and *W. J. Thompson,* for plaintiff in error.

*Lant R. Slaven, E. E. Tomlinson, Jr.,* for defendants in error.

Haymond, President:

In this action of trespass on the case, the plaintiff, Alexander Makarenko, seeks to recover damages from the defendants, W. W. Scott and Williamson Memorial Hospital, a corporation, for personal injury which he claims is the result of negligent and unskillful treatment by the defendant, W. W. Scott, a physician and surgeon acting in his own right and as agent of the defendant, Williamson Memorial Hospital, of an earlier injury received by the plaintiff in a mine accident. The treatment administered to the plaintiff by the defendants occurred during a period of approximately seventy five days in the early part of the year 1943. To the declaration, which is in one count, the defendants filed two special pleas in bar. In defense of the claim these pleas alleged, in substance, that the employer of the plaintiff, the Norfolk and Western Railway Company, and the plaintiff, were subject to the workmen's compensation law of this State, at the time the plaintiff received his original injury in the course of his employment, on January 15, 1943; that the injury of which the plaintiff complains, caused by the treatment administered by the defendants, is an aggravation of his original injury; and that the plaintiff has been fully paid for the original injury, and its aggravation, from the workmen's compensation fund to which his employer was a subscriber at the time of his original injury. It does not appear that the defendants filed a plea of the general issue. A demurrer of the plaintiff to each of the pleas was overruled. The plaintiff did not desire to file any replication to either of the pleas and declined to amend his declaration. Upon these pleadings the Circuit Court of Mingo County, in which the action was instituted, being of the opinion that the pleas set up a complete defense to the claim of the plaintiff, by final judgment entered February 7, 1947, dismissed the action at the cost of the plaintiff. To that judgment the plaintiff obtained a writ of error to this Court.

The material facts, as disclosed by the pleadings, are not in dispute. The plaintiff was employed as a workman in the coal mines of the Norfolk and Western Railway Company, at Chattaroy, in Mingo County, West Virginia. While working for the company, on January 15, 1943, he received an injury in the course of and resulting from his employment which caused a fracture of his left wrist and forearm. He employed the defendants to treat his injury, which they did during a period of approximately seventy five days. At the time, the defendant, Williamson Memorial Hospital, was engaged in the operation of a hospital for the treatment of sick and injured persons, and the defendant, W. W. Scott, was a physician and surgeon, a member of its medical staff, and, as its agent, professionally cared for and treated the plaintiff. When the plaintiff was injured, his employer, Norfolk and Western Railway Company, was a subscriber to the workmen's compensation fund of this State and, after the treatment was administered by the defendants, which resulted in the aggravation of his injury, and of which he complains, the plaintiff was awarded and has been paid compensation from the fund for his injury, including its aggravation, upon the basis of fifteen per cent permanent partial disability. In addition his medical and hospital expenses, in an amount in excess of $290.00, have been paid from the fund. The plaintiff charges that the treatment given him by the defendants was negligent and unskillful and that as a result the fracture did not heal in a normal manner and that it was necessary for other physicians, subsequently employed by the plaintiff, to break and set anew his left forearm in an unsuccessful effort to obtain a correct alignment of the bones of his arm and to remove the deformity caused by the improper treatment administered by the defendants. The plaintiff alleges that he is permanently disabled and that he suffers pain and mental anguish as a result of the negligent treatment of him by the defendants and has sustained damages in the amount of $20,000.00.

It is the contention of the defendants that as the original injury was caused by the employer of the plaintiff, any aggravation of that injury that may have resulted from the treatment furnished by them is, in law, a part of and embraced in the original injury, and as the plaintiff has been paid compensation in full from the workmen's compensation fund for the original injury, including any resulting aggravation, there can be no recovery from them by the plaintiff for any aggravation of his injury that may have been caused by the acts of the defendants of which the plaintiff complains. The plaintiff contends that the defendants are not employers within the meaning of Section 6, Article 2, Chapter 23, Code, 1931, and that for that reason they are not entitled to the immunity from liability which is extended to an employer by that section. The theory upon which the plaintiff seeks recovery is that the aggravation caused by the negligence and the unskillfullness of the defendants in treating his injury constitutes a separate and distinct injury from the one which he received from his employment, and that it gives rise to a separate claim or cause of action.

The question here involved is whether an employee of a subscriber to the workmen's compensation fund of this State, who is injured by his employer in the course of and resulting from his employment, who seeks and obtains the services of a physician and the care of a hospital in the treatment of the injury, and who is paid and accepts compensation in full from the compensation fund for the original injury, as aggravated by the treatment, can recover compensatory damages from the physician and the hospital for aggravation of his injury caused by their negligence and lack of skill in treating the injury.

To support his contention that the defendants are liable, the plaintiff cites and relies upon the decisions of this Court in the cases of *Mercer v. Ott*, 78 W.Va.

629, 89 S.E. 952; *Merrill v. Marietta Torpedo Co.,* 79 W.Va. 669, 92 S.E. 112, L.R.A. 1917F, 1043; and *Tawney v. Kirkhart,* 130 W.Va. 550, 44 S.E. 2d 634.

In *Mercer v. Ott,* 78 W.Va. 629, 89 S.E. 952, this Court held, in Point 3 of the syllabus, that where an employee is killed by an accident arising in the course of and resulting from his employment and a tort-feasor other than his employer is responsible for his death, the right to compensation from the workmen's compensation fund by a dependent of the deceased employee is not lost by a recovery of damages against the third party tort-feasor by the personal representative of the deceased. In that case a workman was an employee of a brick manufacturing company which was a subscriber to the workmen's compensation fund. While at work transferring coal from railroad cars to carts for distribution at the company's plant, and while under a railroad car parked on a siding of the brick company, where he was required to be, the railroad company negligently caused other railroad cars to come in contact with the car the employee was unloading and inflicted the injury which caused his death. The negligence of a third party, not the act of the employer, resulted in his death. An action by the personal representative of the deceased against the railroad company was settled by the payment of $1,250.00, and that settlement was given as one of the reasons for the refusal of the State Compensation Commissioner to allow the claim of the personal representative for compensation from the workmen's compensation fund. The action of the commissioner was reversed by this Court and in the opinion the difference between the right of a dependent to compensation from the fund under the statute and the right to recover damages from a tort-feasor other than the employer was emphasized. The distinction between that case and the case at bar is clear. There the injury was caused by the act of a third party tort-feasor, not by

the employer; here the injury was caused by the act of the employer.

In *Merrill v. Marietta Torpedo Company*, 79 W.Va. 669, 92 S.E. 112, L.R.A. 1917F, 1043, the injury inflicted upon the employee was caused by the negligence of a third party tort-feasor, not the employer who was a subscriber to the workmen's compensation fund. The injured employee, after having been paid and accepted compensation from the fund, sued the tort-feasor to recover damages for his injury. This Court held that payment of compensation from the fund constituted no defense to the action and, in Point 6 of the syllabus, said: "An employe who receives compensation for an injury from the workmen's compensation fund, is not thereby estopped to sue a third person, not his employer, whose negligence caused his injury." There as in the *Ott* case, ·the injury to the employee was caused, not by the employer, as in the case at bar, but by a third party.

In the recent case of *Tawney v. Kirkhart*, 130 W.Va. 550, 44 S.E. 2d 634, the personal representative of a deceased employee of an employer who was a subscriber to the workmen's compensation fund instituted an action for damages against a railroad company and an employee of the same employer for the wrongful death of the deceased caused by the negligence of the railroad company and his fellow employee as joint tortfeasors in a collision which occurred at a railway crossing between a train operated by the company and an automobile driven by the fellow employee in which the employee who was killed in the collision was riding at the time. The action involved the liability of an employee for negligently causing an original injury to another employee which resulted in his death. This Court rejected ·the contention of Kirkhart, one of the defendants, and the fellow employee of the decedent, that because his employer was a subscriber in good standing to the workmen's compensation fund of this State,

he was protected from liability for his own negligence while discharging the duties of his employment.

The factual situations in the *Tawney* case and in the case at bar are entirely different. By the judgment of the trial court in the *Tawney* case, which was affirmed by this Court, the plaintiff's decedent was killed by joint acts of negligence of the railroad company and his fellow employee, which caused an original injury, and no issue arose, as here, with respect to the negligent aggravation, of an original injury caused by an employer, by the improper or unskillful treatment of the injury by a physician or a hospital. In the case at bar there is no joint tort-feasor relationship between the employer of the plaintiff and the defendants. *Mier v. Yoho*, 114 W.Va. 248, 171 S.E. 535. These marked factual differences between the cases readily distinguish the *Tawney* case from the case now before this Court.

In the *Tawney* case, however, this Court considered and overruled the case of *Hinkelman v. Wheeling Steel Corporation*, 114 W.Va. 269, 171 S.E. 538, and that action is relied on by the plaintiff in support of his contention that liability of the defendants exists in this case. The *Hinkelman* case held that a company doctor, because his employer was a subscriber to the workmen's compensation fund, was protected by the workmen's compensation law from liability for malpractice that aggravated an injury sustained in the course of his employment by another employee of the company. In that case the employer of both the doctor and the injured person engaged the doctor who negligently rendered the treatment which aggravated the injury. There the doctor and his patient were employees of the same employer; here the defendants are not employees of the employer of the plaintiff, but persons who were employed by the plaintiff himself to render the treatment of which he complains. In discussing and overruling the *Hinkelman* case this Court said: "It would

seem that the same reasons that apply to the holding that, in the absence of a constitutional or statutory provision to that effect, a coemployee's negligence is not protected by the compensation act would apply in the *Hinkelman* case. There is no contract as between coemployees and they are subject to the provisions of the compensation act in their relationship with each other in no way. They pay nothing into the fund that entitles them to protection under its terms. We can perceive nothing in sound reasoning that would entitle a coemployee to gratuitous protection for his own misconduct. To hold that a coemployee is not liable for his own negligence would increase the hazards of employments and be contrary to public policy. * * * The opinion in the *Hinkelman* case seems to be based upon an assumption that the act contains a provision to the effect that there shall be *no* liability for an injury occurring in the course of and resulting from the employment of a person employed by a subscriber to the fund, extending the meaning of the act to include not only the employer, but also coemployees. At no time has our compensation act contained that broad a provision. It protects only the employer from common law liability. Being of the opinion that the *Hinkelman* decision is unsound, it is hereby expressly overruled."

From this language it is obvious that this Court overruled the decision in the *Hinkelman* case because it disapproved the reasoning, upon which that decision was based, that the compensation statute provided immunity from liability not only to the employer who was a subscriber to the fund but also to his employee. In the *Tawney* case this Court did not decide any question of liability of a physician for his negligent and unskillful treatment of an injured patient or undertake to examine or modify the well established general principles of law which govern that relationship. The action of this Court in the *Tawney* case in overruling the decision in the *Hinkelman* case simply means that no immunity from

liability for negligent and unskillful treatment of an injured employee of a subscriber to the workmen's compensation fund exists by virtue of the statute in favor of a physician by reason of the relation of employee and employer between him and the employer of the injured employee, and that decision does not apply to or determine any issue in this case.

Though there are some decisions which hold that a person who negligently causes personal injuries to another is not liable for increased damages due to the negligence or the unskillfulness of a physician who treats such injuries, the general rule is well settled and widely recognized that if a person who sustains personal injuries, caused by the negligence of another, exercises reasonable care in obtaining the services of a competent physician or surgeon to treat his injuries and they are subsequently aggravated or increased by the negligent or unskillful treatment of such physician or surgeon, the person who caused the original injury is liable for the resulting damage to its full extent. 15 Am. Jur., Damages, Section 85; Annotation II, 8 A.L.R. 507; *McGarrahan v. New York, New Haven and Hartford Railroad Company*, 171 Mass. 211, 50 N.E. 610; *Gray v. Boston Elevated Railway Company*, 215 Mass. 143, 102 N.E. 71; *Hunt v. Boston Terminal Company*, 212 Mass. 99, 98 N.E. 786, 48 L.R.A. (N.S.) 116; *Sauter v. New York Central and Hudson River Railroad Co.*, 66 N.Y. 50, 23 Am. Rep. 18; *Paine v. Wyatt*, 217 Ia. 1147, 251 N.W. 78; *Lane v. Southern Railway Company*, 192 N.C. 287, 134 S.E. 855, 51 A.L.R. 1114; *Keown v. Young*, 129 Kan. 563, 283 P. 511; *McIntosh v. Atchinson, Topeka & Santa Fe Railway Company*, 109 Kan. 246, 198 P. 1084; *Smith v. Missouri, Kansas and Texas Railway Company*, 76 Okla. 303, 185 P. 70; *Martin v. Cunningham*, 93 Wash. 517, 161 P. 355, L.R.A. 1918A, 225; *Pullman Palace Car Company v. Bluhm*, 109 Ill. 20, 50 Am. Rep. 601; *Chicago City Railway Company v. Saxby*, 213 Ill. 274, 72 N.E. 755, 68 L.R.A. 164, 104 Am. St. Rep.

218. In *Vatalaro v. Thomas,* 262 Mass. 363, 160 N.E. 269, it is said that at common law it is well settled that in an action for personal injury the injured person may recover for injuries covered by the negligence of the defendant even though they are aggravated by the mistaken but honest treatment of a physician.

At common law the foregoing rule applied between the employer and the employee and the employer was liable to the employee for an original injury, due to negligence, received during his employment, and for any aggravation of the injury caused by the negligence of a physician or a surgeon in treating it. *Williams v. Dale,* 139 Or. 105, 8 P. 2d 578, 82 A.L.R. 922; *Hunt v. Boston Terminal Company,* 212 Mass. 99, 98 N.E. 786; 48 L.R.A. (N.S.) 116. Of course, by the workmen's compensation law of this State, the employer has been relieved of his common law liability for damages for the negligent injury of his employee, and the right of the injured employee to compensation from the workmen's compensation fund has been substituted in lieu of his cause of action against the negligent employer, as pointed out later in this opinion.

The law regards the negligence of the wrongdoer in causing the original injury as the proximate cause of the damages which result from the subsequent negligent or unskillful treatment of such injury by a physician. *McDonough v. National Hospital Association,* 134 Or. 451, 294 P. 351; *Purchase v. Seelye,* 231 Mass. 434, 121 N.E. 413, 8 A.L.R. 503; Annotation II, 8 A.L.R. 507. Various reasons are stated by the courts for holding the wrongdoer liable in a common law action for the negligence of a physician whose unskillful treatment aggravates the original injury. One reason is that the unskillful treatment is a result which should reasonably have been anticipated by the wrongdoer. *Purchase v. Seelye,* 231 Mass. 434, 121 N.E. 413; 8 A.L.R. 503; *McDonough v. National Hospital Association,* 134 Or.

451, 294 P. 351. Another reason advanced is that the wrongdoer is presumed to know that medical treatment is necessary to the recovery of an injured person and is chargeable for such service and its hazards. *Paine v. Wyatt,* 217 Ia. 1147, 251 N.W. 78; *O'Quinn v. Alston,* 213 Ala. 346, 104 So. 653, 39 A.L.R. 1263. The principal reason generally given is that the aggravation caused by the negligent or unskillful treatment by a physician of the original injury would not have occurred if there had been no original injury, and the aggravation is a proximate result and is in law regarded as one of the immediate and direct damages which naturally flow from the original injury. *McDonough v. National Hospital Association,* 134 Or. 451, 294 P. 351.

The general rule supported by the weight of authority prevails in this jurisdiction. In *Mier v. Yoho,* 114 W.Va. 248, 171 S.E. 535, the plaintiff, an infant, was struck by a truck owned by a candy company and sustained severe personal injuries. At the solicitation of his guardian, the defendants, who were physicians, treated him for his injury. The claim of the infant against the company was compromised by the guardian pursuant to an order of court and a release was executed which discharged the liability of the company. The plaintiff then sued the physicians to recover damages for their negligent and unskillful treatment of the injury. It was the contention of the plaintiff in that case that the cause of action against the wrongdoer who negligently caused the original injury was separate and distinct from the cause of action against the physicians charged with having aggravated that injury by negligent and unskillful treatment, and that recovery or settlement with the original wrongdoer did not bar a recovery against the others. This Court rejected the contention of the plaintiff in that case that a spearate cause of action existed against the defendants and held in Point 1 of the syllabus:

" 'It is a general rule that if an injured person uses ordinary care in selecting a physician * * *, the law regards an injury resulting from mistakes of the physician or his want of skill, or a failure of the means employed to effect a cure, as a part of the immediate and direct damages which naturally flow from the original injury.' 8 Ruling Case Law, p. 449."

The additional question of the effect of a release, by the injured person, of the wrongdoer who caused the original injury, upon his claim for damages for aggravation of the injury against a physician for his negligent treatment, was also raised in the *Mier* case. On that issue this Court held, in Point 2 of the syllabus:

"An injured person's unqualified release of tort-feasor from liability for personal injuries, which release was made after receiving treatment of a physician for such injuries, prevents recovery by injured person of the physician for alleged negligent treatment."

The view expressed in the *Mier* case on that point is supported by the weight of authority as established by decisions of the courts in numerous other jurisdictions. *Retelle v. Sullivan*, 191 Wis. 576, 211 N.W. 756, 50 A.L.R. 1106.

In the later case of *Conley v. Hill*, 115 W.Va. 175, 174 S.E. 883, this Court again recognized and applied the principle that the only cause of action of an injured person for damages for personal injuries which are aggravated by negligent and unskillful treatment rendered by a physician is against the wrongdoer who caused the original injury. In that case the plaintiff, who had suffered a fracture of one of the bones in his leg, sought to recover damages for an aggravated condition alleged. to have been due to the failure of the defendants, a hospital, by its physicians and nurses, and Hill, a physician who was connected with it, to exercise due care. By

special plea the defendants alleged that an action which the plaintiffs had previously instituted against the wrongdoers who caused the original injury had been dismissed with prejudice. In Point 3 of the syllabus this Court held:

"Where a person has been injured by the wrongful act of another, a dismissal with prejudice of his action against the tortfeasor bars any subsequent claim against a physician called to treat the injury for acts of malpractice occurring prior to the institution of the action."

This holding accords with the reasoning in the *Mier* case as to the effect of the unqualified release, by an injured person, of a tort-feasor, from liability for personal injuries, upon his claim against a physician for negligent treatment of the injury as stated in Point 2 of the syllabus in that case.

An exception to the general rule that a release of the original tort-feasor bars an action by the injured person against a physician for the negligent or unskillful treatment of the original injuries resulting in their aggravation is recognized in the decisions of a number of courts in instances in which the negligent treatment of a physician causes a distinctly new, separate, or unforeseen injury which is unrelated to the original injury. The exception seems to operate to permit the injured person to recover damages against a negligent physician or hospital where the new or separate injury which results from the treatment of the injured person is an intervening cause of such nature that it could not have been reasonably foreseen to be the result of the original injury, and it then becomes the proximate cause of the injury inflicted by the treatment even though it would not have occured but for the negligence of the original wrongdoer. 41 Am. Jur., Physicians and Surgeons, Section 137; Annotation, 112 A.L.R. 556; *Piedmont Hospital v. Truitt*, 48 Ga. App. 232, 172 S.E. 237;

*Andrews v. Davis,* 128 Me. 464, 148 A. 684; *Noll v. Nugent,* 214 Wis. 204, 252 N.W. 574; *Purchase v. Seelye,* 231 Mass. 434, 121 N.E. 413, 8 A.L.R. 503. As the facts in the case at bar do not bring it within the foregoing exception, it has no application here.

Another well established rule is that when a plaintiff has accepted satisfaction in full for an injury done to him the law will not permit him to recover again for the same damages. *McDonough v. National Hospital Association,* 134 Or. 451, 294 P. 351; *Berkley v. Wilson,* 87 Md. 219, 39 A. 502; *Cleveland v. City of Bangor,* 87 Me. 259, 32 A. 892, 47 Am. St. Rep. 326. There can be no recovery in an action for malpractice, by a person injured by the negligence of another, against a physician for negligent aggravation of the original injury by improper treatment after a settlement by the injured person with the wrongdoer who caused the injury. *Thompson v. Fox,* 326 Pa. 209, 192 A. 107, 112 A.L.R. 550; *Wells v. Gould,* 131 Me. 192, 160 A. 30. See *Tanner v. Espey,* 128 Ohio St. 82, 190 N.E. 229, in which the plaintiff, who had sustained personal injuries in an automobile accident, which were aggravated by the negligent treatment of the defendant, a physician, attempted to avoid the effect of a release in favor of the negligent motorist on the ground that the claim against the motorist and that against the physician were separate and distinct causes of action. In that case the Court denied recovery and stated that there was but one demand and that the original wrongdoer was liable for all injuries and their aggravation. The reason which underlies the rule is that the injured person has a legal remedy only to obtain compensation for the damage done to him and when that compensation has been received from the wrongdoer, his right to further remedy is at an end, *Thompson v. Fox,* 326 Pa. 209, 192 A. 107, 112 A.L.R. 550; and that, since a recovery may be had against the person causing the injury for the negligent treatment by the physician, the injured person, in settling with

the wrongdoer receives full compensation for all injuries and can not recover from the physician. Annotation 112 A.L.R. 553. In *New River & Pocahontas Consolidated Coal Co. v. Eary*, 115 W.Va. 46, 174 S.E. 573, in dealing with damages recoverable for a joint wrong this Court held that the damages of a plaintiff in tort are entire and indivisible and that in seeking compensation for a joint wrong he is entitled to full satisfaction but to only one satisfaction. This principle applies to an original injury caused by one person which is aggravated by the negligence of a physician who treats the injury; and for the injury and its aggravation the injured person may have but one full satisfaction.

To this point the discussion of the question for solution has related, in the main, to its determination upon the principles of the common law independently of the effect of the applicable provisions of the workmen's compensation law of this State, although some of the cited cases, as an examination of them will reveal, arose under such compensation statutes in other jurisdictions. Consideration should now be given to these provisions and their effect upon the issues presented in this case.

Section 6, Article 2, Chapter 23, Code, 1931, deals with exemption from liability of an employer subject to the workmen's compensation law for injury or death of an employee. That section, in part, is in these words:

> "Any employer subject to this chapter who shall elect to pay into the workmen's compensation fund the premiums provided by this chapter shall not be liable to respond in damages at common law or by statute for the injury or death of any employee however occurring, after such election and during any period in which such employer shall not be in default in the payment of such premiums and shall have complied fully with all other provisions of this chapter: * * *".

The purpose of the Legislature, in enacting this provision, was to relieve an employer, who has complied with the requirement of the compensation statute, from any and all civil liability at common law for the injury or death of an employee in his service. *McVey v. Chesapeake & Potomac Telephone Co.*, 103 W.Va. 519, 138 S.E. 97; *Cox v. United States Coal & Coke Co.*, 80 W.Va. 295, 92 S.E. 559, L.R.A. 1918B, 1118.

Section 1, Article 4, Chapter 23, Code, 1931, as amended by Section 1, Article 4, Chapter 137, Acts of the Legislature of 1939, Regular Session, which, though subsequently amended in 1945, was in effect when the plaintiff was injured, relates to the disbursement of compensation from the fund and, in its pertinent provisions, is expressed in these terms:

"* * * the commissioner shall disburse the workmen's compensation fund to the employees of such employers as are not delinquent in the payment of premiums for the month in which the injury occurs, * * *, and which employees shall have received personal injuries in the course of and resulting from their employment in this state, * * *, according to the provisions hereinafter made; * * *".

The provisions referred to include those contained in Section 6, Article 4, Chapter 23, Code, 1931, as amended, which classify and schedule the disability benefits and the types and the percentages of disability upon which compensation shall be paid.

Section 3, Article 4, Chapter 23, Code, 1931, as amended, in 1935, 1937, and 1941, requires the commissioner to disburse and pay from the fund an amount not to exceed eight hundred dollars for medical, surgical and hospital treatment of personal injuries of an employee, and Section 9 of the same article and chapter, as amended in 1935 and 1937, likewise requires the commissioner, under specified conditions, to expend an

amount not to exceed eight hundred dollars for such treatment of an employee, who sustained permanent disability or whose injuries are likely to result in such disability, for his physical and vocational rehabilitation.

By Sections 1a and 1b, Article 5, Chapter 137, Acts of the Legislature of 1939, Regular Session, an injured employee, within specified time limits, may have an adjustment of his claim and have his claim reopened and obtain greater benefits than those formerly received as compensation for his injury upon a showing by him of progression or aggravation of his condition, or some fact which was not formerly considered by the commissioner, which would entitle the injured employee to such greater benefits.

Other than the case of *Hinkelman v. Wheeling Steel Corporation,* 114 W.Va. 269, 171 S.E. 538, overruled in the *Tawney* case for the reason stated earlier in this opinion, no case involving the claim of an employee of an employer subject to the workmen's compensation act, who sustains personal injuries caused by the employer which were received by the employee in the course of and resulting from his employment, for damages resulting from the malpractice of a physician or a hospital, has been decided by this Court. Claims of that nature, however, have been considered by the appellate courts in numerous jurisdictions under various workmen's compensation statutes.

In *Williams v. Dale,* 139 Or. 105, 8 P. 2d 578, 82 A.L.R. 922, a case which arose under a workmen's compensation act which in its pertinent provisions is similar to the workmen's compensation law of this State, the Supreme Court of that State, one judge dissenting, held that an employee who accepted an award of workmen's compensation for personal injuries received as a result of his employment was barred from maintaining an action against an attending physician for unskillful

treatment which aggravated his injuries where, under the statute, medical and surgical treatment are a part of the compensation to which he is entitled. The facts in that case closely resemble those in the case at bar. The plaintiff there, as here, was awarded benefits for permanent partial disability and furnished medical and hospital treatment, all of which were paid from the compensation fund, and the award was based upon all the injuries sustained by the plaintiff at the time he was hurt and subsequently. In the opinion the Court says:

> "The aggravated injury caused by the medical or surgical treatment of the injured workman, whether such treatment was skillful or otherwise, became a part of the original injury and was taken into consideration in the arbitration of the Industrial Accident Commission, according to the provisions of the statute, in making the final award, and when plaintiff accepted the amount of the award he accepted compensation for the whole injury, including the injury caused by the malpractice of defendants, alleged in the complaint. In other words, the Industrial Accident Commission awarded compensation for the injuries of plaintiff as they existed at the time of the final award. Section 49-1827, subsec. (i), Oregon Code 1930; 8 R.C.L. 449; Chebot v. State Industrial Acc. Comm., 106 Or. 660, 212 P. 792; Ross v. Erickson Construction Co., 89 Wash. 634, 155 P. 153, L.R.A. 1916F, 319.

> "In accordance with the general rule, when a plaintiff has accepted satisfaction in full for an injury done him from whatever source it may come, he is so far affected in equity and good conscience that the law will not permit him to recover again for the same damages, as the law regards an injury resulting from the mistakes of a physician in treating an injury as a part of the immediate and direct damages which naturally flow from the original injury. McDonough v. National Hospital Association, supra, page 455 of 134 Or., 294 P. 351; and

cases there cited; Reed v. City of Detroit, 108 Mich. 224, 65 N.W. 967; Stover v. Inhabitants of Bluehill, 51 Me. 439."

Under the same statute or other workmen's compensation statutes, some of which are substantially similar and some of which contain different kinds of provisions, holdings to the same effect appear in *McDonough v. National Hospital Association*, 134 Or. 451, 294 P. 351; *Ross v. Erickson Construction Company*, 89 Wash. 634, 155 P. 153, L.R.A. 1916F, 319; *Anderson v. Allison*, 12 Wash. 2d 487, 122 P. 2d 484, 139 A.L.R. 1003; *McConnell v. Hames*, 45 Ga. App. 307, 164 S.E. 476; *Hoover v. Globe Indemnity Company*, 202 N.C. 655, 163 S.E. 758; *Hanson v. Norton*, 340 Mo. 1012, 103 S.W. 2d 1; *Paine v. Wyatt*, 217 Ia. 1147, 251 N.W. 78; *Markley v. White*, 168 Okla. 244, 32 P. 2d 716; *Alexander v. Von Wedel*, 169 Okla. 341, 37 P. 2d 252; *Roman v. Smith*, 42 Fed. 2d 931; *Sarber v. Aetna Life Insurance Company*, 23 Fed. 2d 434; *Revell v. McCaughan*, 162 Tenn. 532, 39 S.W. 2d 269; and *Vatalaro v. Thomas*, 262 Mass. 363, 160 N.E. 269.

By the workmen's compensation law of this State, there is no liability upon the part of the employer for the damages which the plaintiff sustained as a result of his original injury. In lieu of any such claim the plaintiff is required to look entirely to the workmen's compensation fund for the payment of compensation upon the basis of his disability as determined in the manner provided by the statute. The remedy of compensation from the workmen's compensation fund is exclusive and, in this case, it does not appear that the award of fifteen per cent partial permanent disability to the plaintiff was protested at any time, or that any appeal was sought or that any claim was made for readjustment of the award. Although it may be argued with much force and strong appeal to sympathy that the maximum compensation to which an injured employee is entitled under the existing disability schedules, for the various types

of injury and the different percentages of disability which may be determined by the State Compensation Commissioner in any particular case, is inadequate and substantially less than a claimant would likely receive by a verdict of a jury, nevertheless the amount fixed by the commissioner, under the statute, if not altered upon appeal, is, in law, in each case, adequate compensation, and all the compensation which the law allows. It is, for that reason, full and complete compensation. If under existing workmen's compensation schedules a final award in a given case is actually, though not legally, inadequate, the relief in increasing the maximum amounts and percentages, fixed and limited by the statute, must come from the Legislature and not from the courts. The power to classify disabilities and specify rates of compensation and to limit them by schedules is legislative, not judicial.

Though there are some cases to the contrary, the weight of authority and sound reason, as well as the holdings of this Court in *Mier v. Yoho*, 114 W.Va. 248, 171 S.E. 535, and *Conley v. Hill*, 115 W.Va. 175, 174 S.E. 883, impel and justify the conclusion that, as the employer of the plaintiff is relieved from liability for the original injury received by the plaintiff in the course of and resulting from his employment, as the plaintiff is required to look to the workmen's compensation fund exclusively for payment for the original injury and has been compensated in full to the extent provided by the workmen's compensation statute for it and its aggravation caused by the physician and the hospital which he himself employed to treat him, as the law regards the injury which resulted from their negligent or unskillful conduct as a part of the immediate and direct damages which naturally flow from the original injury, and as an injured person is entitled to but one full satisfaction for the same injury, the plaintiff is precluded from maintaining this action against the defendants.

It should be emphasized that the conclusion reached in this case does not announce or adopt any new or different principle which relieves a physician or a hospital from liability for negligent treatment resulting in the aggravation of an injury originally caused by an employer or any other person, although counsel for the plaintiff assert that it does, and the minority members of this Court appear to share that view. That the original wrongdoer who causes the injury, in the first instance, however, is liable for the injury and its aggravation has long been recognized generally as a firmly established principle of the law of malpractice, as indicated by numerous cases already cited in this opinion. That principle is not altered or superseded by the workmen's compensation law of this State except to the extent that the statute now requires the injured employee to resort to the fund for compensation in lieu of his former remedy of an action to recover damages from his employer and gives to an employer who is subject to the provisions of the statute and has complied with its requirements immunity from an action by or for his employee for damages for a personal injury received in the course of and resulting from his employment. Neither does the holding in this case relieve a physician from liability for the negligent aggravation of an original injury caused by an employer because of any immunity from suit afforded him by the workmen's compensation statute as a fellow employee of the injured workman. It is not disputed in this case that the defendants are not employees of the employer of the plaintiff and of course that relation, in any conceivable meaning of the word, does not here exist between the plaintiff and either of the defendants. But if such relation did exist between them the decision of this Court in the *Tawney* case is clearly to the effect that the workmen's compensation statute does not relieve a fellow employee from liability for his negligent injury of another employee of the same employer. That decision makes it plain beyond question that no such immunity exists in

favor of a fellow employee by virtue of the statute. It was for that reason, as stated earlier in this opinion, that the *Tawney* case expressly overruled the earlier decision in the *Hinkelman* case which relieved a doctor of liability for his negligent treatment resulting in aggravation of an original injury of a fellow employee, caused by the employer of both, on the ground that the statute protected the doctor, as a fellow employee, against any claim for damages in an action against him by the injured employee as his patient.

The judgment of the Circuit Court of Mingo County must be, and it is, affirmed.

*Affirmed.*

Kenna, Judge, dissenting:

If I correctly understand the majority opinion, it is based alternatively upon two propositions:

First: That no right of action against a doctor accrues to a person injured by the wrongful act of another when the injury is treated negligently by the doctor, with the result that the damage done by the original injury is increased, and, by analogy, no right of action is created by the malpractice of a doctor upon a person suffering an injury that has been compensated under the workmen's compensation act.

Second: That even though a right of action against the doctor at fault does arise, any liability that the doctor may have incurred is fully discharged where the person injured accepts a workmen's compensation award paid on the account of the person in whose employ he was when injured.

In my opinion, both are thoroughly unsound and neither is supported by the cases cited in the majority opinion as sustaining it.

It is correct that the original wrongdoer is liable to the person injured by his wrongful act for the negligent treatment of his injury by a doctor. One who wrongfully harms the person of another cannot be permitted to muddy a recovery of damages by adroitly involving a doctor. If that were not the rule the quantum of damages would be a real issue in all cases of even admitted liability, favoring the initial wrongdoer. However, if he who suffered both wrongs believes that the evidence of damage done by the malpractice is distinct and outstanding, he may elect to sue the doctor first. In that case a judgment against or settlement with the defendant does not include the initial tort-feasor, of course, who may be afterward proceeded against for the wrong done by his negligence separate from that of the doctor, the burden of proof as to damages in each case resting upon the plaintiff. The rule goes to the measure of damages, however, and not to the absorption by the first wrongdoer of the wrongful act of the second, thus preventing a cause of action from arising against the doctor. None of the cases cited in the majority opinion indicates that a cause of action does not arise against the doctor.

In *Mier v. Yoho,* 114 W.Va. 248, 171 S.E. 535, this Court did not reject the contention of the plaintiff that a separate cause of action arose, as the majority opinion states. It held to the exact contrary by stating in the second syllabus that the "unqualified release" of the principal tort-feasor operated to prevent the recovery by the injured person for the result of the doctor's alleged negligence. It is to be noted that the syllabus referred to speaks of an *unqualified* release, necessarily implying that a release which is qualified in that respect would have a different effect. If the release "prevents" recovery, it necessarily operates upon the existence of something to be released, and that something is a right against the doctor, for if there were no right, no release or other bar would be necessary to "prevent" recovery.

As bearing out the distinction drawn in the *Yoho* case between unqualified and qualified releases of the principal tort-feasor, the following cases will be found to give effect to a reservation of the right to sue the physician in a release of the principal tort-feasor. *Armieri v. St. Joseph's Hospital,* 159 Misc. 563, 288 N.Y.S. 483; *Staehlin v. Hochdoerfer,* (Mo.), 235 S.W. 1060.

The majority opinion states that in the case of *Conley v. Hill,* 115 W.Va. 175, 174 S.E. 883, this Court "applied the principle that the only cause of action of an injured person for damages for personal injuries which are aggravated by negligent and unskillful treatment rendered by a physician is against the wrongdoer who caused the original injury". With every deference, that statement is plainly in error. In that case a settlement had been made with the original wrongdoer evidenced by an unqualified release which was made the basis of the dismissal "with prejudice" of a pending action against him. A casual reading of the opinion will show that its entire purport and tenor is that the release and dismissal "extinguished" the rights of the person injured as against the doctor for wrongful treatment. The *Conley* opinion contains this language:

> "Therefore, the dismissal, 'with prejudice', being determinative of plaintiff's rights against the original wrongdoers, under the case of *Mier v. Yoho, supra,* extinguishes any rights theretofore had against the defendants due to any act of malpractice up to the date of the institution of said action."

Since extinguishing a right presupposes that the right exists, the *Conley* case holds by inevitable corollary that there is a separate right of action against the doctor; not that no such right exists.

An examination of the numerous cases cited in the majority opinion following the reference to 15 Am. Jur.,

"Damages", Section 85, will show that they all deal with the satisfaction or transfer of the right against the doctor, and that none of them hold that right to be nonexistent.

Believing that the cases cited in the majority opinion upon the first proposition, sustain, instead of defeat, the existence of a right of action against a doctor under the circumstances of this case, if I have correctly understood the majority opinion, I disagree with the first proposition. I think that the person injured by malpractice may forego his right against the tort-feasor for his initial injury and sue the doctor who negligently contributed, perhaps overwhelmingly, to the wrongful first harm.

But conceding that there is a separate right of action against the doctor-wrongdoer which is extinguished by a settlement resulting in a general release of the principal tort-feasor, is the payment of workmen's compensation to the person injured a settlement in full that has the same effect? I see no way that it could be on any sound principle. Remembering that the effect of a release, or settlement, that forms the basis of the underlying rule, rests upon the intention of the parties, I have no difficulty in reaching the conclusion that the acceptance of payment of a contractual obligation (*Gooding v. Ott, State Compensation Commissioner,* 77 W.Va. 487, 87 S.E. 862; *Hardin v. Workmen's Compensation Appeal Board,* 118 W.Va. 198, 189 S.E. 670; *Lancaster v. State Compensation Commissioner,* 125 W.Va. 190, 23 S.E. 2d 601) does not, *per se,* release a third person from a tort liability, as malpractice is in this jurisdiction. *Kuhn v. Brownfield,* 34 W.Va. 252, 12 S.E. 519; *Baker v. Hendrix,* 126 W.Va. 37, 27 S.E. 2d 275. The brief for the defendants below, defendants in error, treats the compensation act as effecting a "release" of the employer's liability to the employee, as is done by the release from liability of the wrongdoer in a tort case. To

the contrary, the act replaces the tort responsibility of the employer with the contractual responsibility under its provisions, Code, 23-2-6, expressly providing that a subscriber in good standing "shall not be liable to respond in damages at common law or by statute for the injury or death of any employee however occurring, * * *". The award of compensation is not based upon the wrong of the employer, and it may be entirely due to the simple negligence of the employee or pure accident. It does nothing more than partly recompense the injured person for his lost earning power. Code, 23-4-6. It pays nothing for unliquidated damages, including disfigurement, deformity, anguish, pain, suffering, or the wanton disregard of the rights of others. The measure of damages of the two have only one element in common: lost earning power; and of that the workmen's compensation act makes only a partial restitution. It is true that in many of the compensation acts of other jurisdictions there is an express provision which subrogates the right of the employee to the employer or to the administrator of the fund. That is true of the Oregon statute, mistakenly stated in the majority opinion to contain pertinent provisions similar to those of our act, upon which is based the holding in *Williams v. Dale,* 139 Or. 105, 8 P. 2d 578, 82 A.L.R. 922. The Oregon statute contains, as ours does not, an express subrogation provision quoted in the *Williams* opinion. Therefore, its "pertinent provisions" are not similar to those of our compensation act. An investigation will show that in each case cited in the majority opinion, the compensation statute upon which it rests has in it an express provision which prevents recovery. Our act has no such provision.

Therefore, because of the pronounced dissimilarity and different nature of the cases, one on contract and the other for tort, and because of the absence of a subrogation clause or other similar provision in our workmen's compensation statute that would bar recovery, I am of opinion that the award of compensation does not

bar the recipient from recovery against a physician who has negligently treated the injury for which compensation has been awarded.

I believe that the opinion in the case of *Tawney v. Kirkhart*, 130 W.Va. 550, 44 S.E. 2d 634, over-ruling the case of *Hinkelman v. Wheeling Steel Corporation*, 114 W.Va. 269, 171 S.E. 538, is misunderstood by the majority. The *Hinkelman* case was overruled because its decision, holding that the conduct of the doctor was that of the employer and that liability rested upon the employer alone, and came within the employer's protection under the compensation act, ignoring the fact that the doctor's acts were his own acts for which he was responsible, was thought by the majority of the Court to be erroneous. The statement in the *Hinkelman* opinion that our compensation act contained a provision that for the injury or death of an employee of a subscriber to the fund, there should be *no* liability aside from compensation, either at common law or by statute, whereas the section referred to in the opinion contained no such provision nor did it appear elsewhere, was also considered in overruling. The *Kirkhart* opinion, however, goes further and gives several outstanding reasons why, in the absence of such statutory provision, the rule of the *Hinkelman* case gratuitously exempting a doctor who has no contractual relationship with the plaintiff except that of physician and patient, from liability for malpractice, could not be sustained. Since the *Kirkhart* decision we have had no change in our related statutes. Yet this case reestablishes exactly the same rule laid down in the *Hinkelman* case: that there can be no recovery against a doctor for malpractice by a compensation claimant for the negligent treatment of a compensable injury. So, notwithstanding the distinction attempted in the majority opinion, we are back to exactly the situation respecting such matters as existed before the *Kirkhart* case was decided.

The attempted distinction of the cases of *Mercer v. Ott*, 78 W.Va. 629, 89 S.E. 952, and *Merrill v. Marietta Torpedo Company*, 79 W.Va. 669, 92 S.E. 112, L.R.A. 1917F 1043, from the case at hand begs the question under consideration. For the correct application of. the *Ott* and *Merrill* cases see 3 Schneider Workmen's Compensation 476, and footnotes. By confusing the wrongful act of injury for which recovery is sought from the doctor, with that of the employer which preceded it, and further by thinking that because the employer is liable in damages for the act of the doctor, the doctor can commit no independent wrong, the position of the majority becomes unique. I believe that a reading of the *Ott* and *Merrill* cases will show that both apply in principle to this case, even though, as is stated with emphasis in the majority opinion, the facts are not identical.

As holding a physician liable in an action by the person injured for malpractice in the treatment of an injury for which compensation had been received, see *Huntoon v. Pritchard*, 280 Ill. App. 440. This opinion contains what seems to be a thorough and exhaustive review of the cases of this country having to do with third party liability and subrogation under the various compensation acts, the clear majority sustaining the reasoning of the court in the *Huntoon* case. This decision was affirmed by the Illinois court of last resort. *Huntoon v. Pritchard*, 371 Ill. 36, 20 N.E. 2d 53.

For a clear discussion of the distinction of third party liability in tort and the payment of compensation because of a contractual relationship created by the compensation act between employer and employee as a fundamental reason for not relieving a doctor from liability for malpractice in a compensation case, see *McGough v. McCarthy Improvement Co.*, 206 Minn. 1, 287 N.W. 857. To the same effect see *Froid v. Knowles*, 95 Colo. 223, 36 P. 2d 156.

The case of *Crab Orchard Imp. Co. v. Chesapeake & O. Ry. Co.* (4th Cir.), 115 F. 2d 277, discusses the question of subrogation fully. The opinion applies the *Ott* and *Merrill* cases as they are applied in this dissent.

The law does not favor the wrongdoer, and yet, under the rule laid down by the majority opinion, as I understand it, an employer without fault may be required to respond in compensation to an employee whose injury is due to his own negligence, while a doctor plainly guilty of malpractice in treating the injury is completely protected by the money paid by a blameless subscriber to the fund. It puts the compensation patient in a legal class by himself without an enforceable right of any kind. I do not believe that doctors as a whole need nor desire that type of protection. To have it known that they did would detract from public confidence and lower the earned dignity of their profession.

For the reasons stated I believe that none of the cases cited in the majority opinion sustain its conclusion and that its reasoning is unsound. On the contrary, I believe that the great weight of authority is that under the circumstances of this case, the doctor is liable, though in a tort case the harm done by malpractice may be charged against the principal tort-feasor, and if recovered from him may not be recovered against the doctor as well.

I therefore respectfully dissent and am authorized to say Judge Lovins joins herein.